CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED for RKu

MAR 1 6 2012

JULIA C. DUDLEY, CLERK
BY: HMcDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DAVID TATUM, | ) | Civil Action No. 7:10-cv-00296 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| C/O SHOEMAKER, et al., | ) | By: Hon. Jackson L. Kiser |
| Defendants. | ) | Senior United States District Judge |

David Tatum, a federal prisoner proceeding pro se, filed a civil action pursuant to Bivens

v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and the

Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq., with jurisdiction vested in 28

U.S.C. §§ 1331, 1343, and 1346.  Plaintiff names as defendants correctional officers Shoemaker,

Webb, Wilson, Laster, Whitey, and Stiller; Federal Bureau of Investigations ("FBI") Agents John

Does 1, 2, and 3[1]; Nurse Teresa Meade; and Terry O'Brien, former Warden of the United States

Penitentiary in Lee County, Virginia ("USP Lee").  Defendants filed motions for summary

judgment, and plaintiff responded, making the matter ripe for disposition.  After reviewing the

record, I grant defendants' motions for summary judgment.

I.

The record reveals the following facts in a light more favorable to plaintiff.  On January

29, 2009, defendant Laster approached plaintiff in the USP Lee recreation yard and told him that

FBI agents wanted to speak with him.  Plaintiff refused, and officers ultimately escorted him to a

cage in the recreation yard.  Plaintiff stayed in the recreation cage until defendants Webb and

---

[1] Defendants acknowledge that these John Doe defendants are FBI Agent Thomas Snapp and Assistant United States Attorneys ("AUSAs") Zachary Lee and Craig Jacobsen, and plaintiff acknowledges their identities as the John Doe defendants in his subsequent filings.  Accordingly, I substitute these people for the John Doe defendants. Fed. R. Civ. P. 19, 21.

Shoemaker arrived to escort him to an interview room inside the prison. Plaintiff complied with Webb's order to submit to handcuffs, but Webb allegedly tightened the handcuffs "maliciously" and "beyond reason." Plaintiff told him that the handcuffs were hurting, but Webb did not loosen them. Shoemaker helped Webb escort plaintiff to the interview room by twisting plaintiff's arms and lifting plaintiff off his feet. The combination of tight handcuffs and arm twisting allegedly caused plaintiff severe pain and suffering for two or three minutes and caused plaintiff to lose feeling in his right hand.

Shoemaker and Webb escorted plaintiff to the interview room where the FBI agent, the AUSAs, Laster, Stiller, and Wilson were waiting. Laster and Stiller "slammed" plaintiff into a chair. Plaintiff told everyone in the interview room that he was not going to talk to the FBI and stood up from the chair. Stiller immediately grabbed plaintiff, used a choke hold, and "smashed him" into the concrete floor, allegedly inflicting severe pain and suffering. Webb and Whitey jumped on plaintiff's back with their knees and struck him multiple times in the ribs with closed fists while other officers placed leg irons on him. Webb, Whitey, and Shoemaker then stood plaintiff up and escorted him from the interview room to a medical exam. Nurse Meade's report of the clinical examination thirty minutes later reveals that plaintiff denied any symptoms, plaintiff had no apparent distress, and Nurse Meade did not discover any medically significant findings.

Webb accused plaintiff of biting him during the scuffle, and Wilson ordered plaintiff to provide a blood sample. Plaintiff submitted to Nurse Meade drawing his blood only because of Wilson's "threat of force."

Laster charged plaintiff with an institutional violation for disobeying an order to remain seated, allegedly spoken before plaintiff stood from the chair.  Plaintiff was found guilty of the charge and lost thirty-days' use of phone and commissary privileges.

In light of these events, plaintiff specifically states the following claims:

A.  Shoemaker and Webb used excessive force, in violation of the Eighth Amendment, and negligently used force and committed assault and battery, in violation of Virginia law, by tightening plaintiff's handcuffs, twisting plaintiff's arms, and lifting plaintiff up to escort plaintiff from the recreation cage;

B.  Laster and Stiller negligently used force and committed an assault and battery, in violation of Virginia law, by slamming plaintiff into the chair;

C.  Stiller used excessive force, in violation of the Eighth Amendment, and negligently used force and committed assault and battery, in violation of Virginia law, by putting plaintiff in a chokehold and slamming plaintiff onto the concrete floor;

D.  Webb and Whitey used excessive force, in violation of the Eighth Amendment, and negligently used force and committed assault and battery, in violation of Virginia law, by jumping on plaintiff's back with their knees and striking plaintiff in the ribs;

E.  Webb should have known that plaintiff's blood would be extracted against plaintiff's will when Webb slandered plaintiff by claiming plaintiff bit Webb;

F.  Wilson and Meade violated the Fourth Amendment by compelling plaintiff's consent to have blood drawn and drawing the blood, respectively;

G.  Laster retaliated against plaintiff, in violation of the Fifth Amendment, by filing a libelous incident report against plaintiff because plaintiff filed a grievance against Laster; and

H.  Cross[2] is liable for the negligent supervision of Webb, Whitey, and Shoemaker because Cross knew or reasonably should have known that these officers had "dangerous proclivities."

---

[2] Cross, whoever this may be, is neither a defendant nor described in the Amended Complaint.  Accordingly, relief against Cross is not possible, but I liberally construe the claim as against O'Brien and Wilson.

Plaintiff requests as relief $25,000 in compensatory damages and $500,000 in exemplary damages.

Plaintiff alleges the following facts about his attempts to exhaust administrative remedies. Plaintiff hand delivered to O'Brien a BP-9 grievance form about the officers' excessive force in the interview room. Plaintiff asked O'Brien about the grievance two weeks later, and O'Brien said he lost it. Plaintiff mailed O'Brien a second BP-9 but did not receive a response within thirty days. Plaintiff filed a third BP-9 with a Unit Team member, and O'Brien denied the grievance on July 7, 2009. Plaintiff mailed his BP-10 appeal of O'Brien's response on August 20, 2009. Bureau of Prisons ("BOP") staff denied his BP-10 appeal, and plaintiff appealed to the BOP Central Office, which did not respond. Plaintiff mailed a Claim for Damage, Injury, or Death to the BOP, which denied the claim by a letter dated February 9, 2010. Plaintiff filed this action within six months of the BOP's letter.

II.

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[3] Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party

---

[3] The parties received reasonable and explicit notice that the court may convert a motion to dismiss that references matters outside the pleadings into a motion for summary judgment when the Clerk issued a timely Roseboro notice. See Fed. R. Civ. P. 12(d); Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific, admissible facts that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248.

Even if there is no dispute as to the evidentiary facts, summary judgment is not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). The court accepts as true the evidence of the moving party and resolves all internal conflicts and inferences in the moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Furthermore, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a

summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62

(4th Cir. 1995).   A plaintiff cannot use a response to a motion for summary judgment to correct

deficiencies in a complaint challenged by a defendant's motion for summary judgment. See

Cloaninger v. McDevitt, 555 F.3d 324, 336 (4th Cir. 2009) (noting that a plaintiff may not amend

a complaint through argument in a brief opposing summary judgment); Gilmour v. Gates,

McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (same).

A.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT FOR PLAINTIFF'S TORT CLAIMS.

        Plaintiff filed a claim against the United States via the FTCA for injuries he claims to

have suffered from the defendants' tortious conduct.[4]  Plaintiff specifically alleges that Laster

and Stiller negligently used force and committed an assault and battery by slamming him into the

chair; Stiller negligently used force and committed assault and battery by putting him in a

chokehold and slamming him onto a concrete floor; Webb and Whitey negligently used force and

committed assault and battery by jumping on his back with their knees and striking him in the

ribs; Webb slandered plaintiff by accusing him of biting Webb; and Laster filed a libelous

incident report against plaintiff.  I also liberally construe claims of negligent supervision against

O'Brien and Wilson.

        The United States has waived its sovereign immunity under the FTCA to allow actions

for injuries caused by governmental employees.[5]  28 U.S.C. § 1346(b).  See United States v.

---

[4] Plaintiff filed a motion to join the United States as a defendant to his FTCA claims.  The defendants acknowledge that the United States should be joined as a party to defend the tort claims made against its employees.  See 28 U.S.C. § 2679(c)-(d) (authorizing the Attorney General to substitute the United States as a party to an FTCA claim brought against its employee); Iodice v. United States, 289 F.3d 270, 273 n.1 (4th Cir. 2002) (stating the United States is the only proper party in an FTCA action).  Accordingly, the court grants the joinder request.

[5] This waiver of immunity is limited by exceptions to the waiver found in 28 U.S.C. § 2680.  If any of the listed exceptions to the waiver of immunity apply in a case, the court must dismiss the complaint because the United States is still immune from suit.  Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001).

Orleans, 425 U.S. 807, 814 (1976) (recognizing that the United States cannot be sued without a waiver of its sovereign immunity).  Specifically, a plaintiff may recover monetary awards from the United States for injury to or loss of property, personal injury, or death "caused by the negligent or wrongful act or omission of any employee of the [United States] while acting within the scope . . . of employment." 28 U.S.C. § 1346(b).  State law determines whether an FTCA claimant is entitled to relief.  Id.; Medina, 259 F.3d at 223 (noting that the substantive law of the state in which the tortious act or omission occurred controls the adjudication of an FTCA claim).

1.  Plaintiff did not present all of his FTCA claims to the BOP for administrative review.

A claimant must first present an administrative FTCA claim to the appropriate federal agency, which must issue a final, written denial before a claimant can file a civil action.  28 U.S.C. § 2675(a).  The requirement to file an administrative claim is jurisdictional and cannot be waived.  Kokotis v. U.S. Postal Serv., 223 F.3d 275, 278 (4th Cir. 2000).

Plaintiff filed an administrative claim for damage, injury, or death with the BOP, which denied the claim on February 9, 2010.  (Wahl First Aff. (no. 68-1) Attch. B, 4-5.)  Plaintiff alleged in his administrative claim:

> I was assaulted because I refused to sit and participate in an investigation. . . .  I informed the FBI, AUSA, and the institution staff that I had nothing to say to anyone and definitely was not speaking to anyone without proper representation (attorney) present and that I would like to be taken back to my cell.  As I was leaving my chair and telling the staff to take me back to my cell because the interview was over, the institution staff[,] which was about seven of them, jumped me and knocked [me] to the ground and several of them commenced to striking me in the right rib area and one of them had me in a choke hold.  For two weeks I suffered pain in my back[] and right rib area.

(Id.)

7

Plaintiff's FTCA claim to the BOP clearly discusses conduct that only occurred in the interview room after he stood up from his chair.  The administrative claim does not discuss how Webb and Shoemaker transported him there, how he was "slammed" into the chair, any slander about biting, a libelous incident report, negligent use of force, or negligent supervision. Accordingly, plaintiff exhausted only his claims of the intentional assault and battery that allegedly occurred in the interview room after he stood up, and the United States is entitled to summary judgment for the other, unexhausted FTCA claims.[6]

   2.   <u>Plaintiff fails to state a claim of assault and is not entitled to relief for the alleged battery.</u>

"The tort of assault consists of an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery." <u>Koffman v. Garnett</u>, 265 Va. 12, 16, 574 S.E.2d 258, 261 (2003).  A battery is an unwanted touching that is not consented to, excused, or justified. <u>Id.</u>  <u>See</u> <u>Pugsley v. Privette</u>, 220 Va. 892, 899, 263 S.E.2d 69, 74 (1980). A person cannot be liable for battery "'without an intention to do bodily harm - either an actual intention or an intention imputed by law.'" <u>Adams v. Commonwealth</u>, 33 Va. Ct. App. 463, 468, 534 S.E.2d 347, 350 (2000) (quoting <u>Davis v. Commonwealth</u>, 150 Va. 611, 617, 143 S.E. 641, 643 (1928)).  The intent to harm may be shown by the circumstances of the offense. <u>Commonwealth v. Vaughn</u>, 263 Va. 31, 36, 557 S.E.2d 220, 223 (2002).

---

[6] Furthermore, plaintiff's reliance on the label and conclusion of "negligence" is not sufficient to state a claim of negligence without sufficiently detailing duty, breach, causation, and harm.  Moreover, Virginia does not recognize a common law tort of "negligent supervision."  <u>See, e.g.</u>, <u>Chesapeake & Potomac Tel. Co. v. Dowdy</u>, 235 Va. 55, 61, 356 S.E.2d 751, 754 (1988).

Plaintiff fails to state a claim of assault for events inside the interview room.  Plaintiff does not describe any apprehension of an immediate battery from the alleged chokehold or punches to his back while plaintiff was face down on the floor.  Furthermore, the chokehold and punches subsumed any reasonable inference of apprehension once they occurred without plaintiff's expectation.  Accordingly, defendants are entitled to summary judgment for plaintiff's assault claims.

Virginia law enforcement officers enjoy "special protection" from tort liability when performing official duties in a lawful manner.  See Mercer v. Commonwealth, 150 Va. 588, 599, 142 S.E. 369, 372 (1928) ("[A]s an officer, he has an affirmative duty to perform, and in the performance thereof he should, so long as he keeps within due bounds, be protected.").  Thus, a battery is permitted when justified in the performance of a law enforcement officer's duties.  See Unus v. Kane, 565 F.3d 103, 117 (4th Cir. 2009) ("Virginia recognizes that police officers are legally justified in using reasonable force to execute their lawful duties."); Gnadt v. Commonwealth, 27 Va. App. 148, 151, 497 S.E. 2d 887, 888 (1998) ("A police officer does not commit a battery when he touches someone appropriately to make an arrest."); Davidson v. Allam, 143 Va. 367, 373, 130 S.E. 245, 246 (1925) ("Officers, within reasonable limits, are the judges of the force necessary to enable them to make arrests, to prevent escapes, and to deliver prisoners where they are required by law or by warrant to deliver them.  When acting in good faith, the courts will afford them the utmost protection, and they will recognize the fact that emergencies arise when they are not expected to exercise that cool and deliberate judgment which courts and juries exercise afterwards upon investigations in court.").

Assuming plaintiff's alleged facts are true, no reasonable trier of fact could find in plaintiff's favor about defendants' alleged battery.  Plaintiff admits that, once in the interview room, he repeatedly said he would not talk to anyone and stood up from the chair.  It was only when plaintiff got up from the chair and attempted to walk out of the interview room that correctional officers touched him to prevent him from moving around the room with guests present.  Plaintiff acknowledges that they restrained him, placed him in leg irons, stood him up, and escorted him to a medical evaluation.

Plaintiff's alleged facts evince that the defendants used force in a lawful manner while performing their official duties.  Pursuant to 28 C.F.R. § 552.20 and BOP Program Statement 5566.06, BOP staff may use the necessary force "to gain control of the inmate, to protect and ensure the safety of inmates, staff, and others, to prevent serious property damage and to ensure institution security and good order."  The alleged force used against plaintiff occurred when he stood up from a chair and tried to leave the interview room, which also contained correctional officers and guests to the prison.  Defendants used force to stop plaintiff's movement, pin him to the floor, secure leg restraints, stand him up, and take him to a medical exam.  These facts evince a good faith effort to use reasonable force in a lawful manner.  Accordingly, the defendants are entitled to summary judgment for plaintiff's exhausted FTCA claims of battery because Virginia law does not provide him any relief.

B.    PLAINTIFF'S UNSUCCESSFUL FTCA CLAIMS BAR CONSIDERATION OF THE SAME CLAIMS FILED PURSUANT TO BIVENS AGAINST THE SAME FEDERAL AGENTS.

"The judgment in an action under [the FTCA] shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the

government whose act or omission gave rise to the claim." 28 U.S.C. § 2676.  Plaintiff accuses

defendants of committing various common law torts and relies on defendants' same conduct to

allege violations of his civil rights.  As discussed supra, defendants are entitled to summary

judgment for plaintiff's common law tort claims filed pursuant to the FTCA.  Accordingly,

defendants' success on plaintiff's FTCA claims bars consideration of plaintiff's Bivens claims

based on the same federal agents' conduct.  See Unus, 565 F.3d at 122 ("[T]he plaintiffs chose to

pursue their claims against the federal agent defendants through Bivens as well as under the

FTCA.  As such, they risked having a judgment on the FTCA claims operate to bar their Bivens

theories."); Freeze v. United States, 343 F. Supp. 2d 477, 481 (M.D.N.C. 2004), aff'd 131 F.

App'x 950 (4th Cir. 2005) (per curium) (relying on 28 U.S.C. § 2676 to bar consideration of

constitutional Bivens claims because the FTCA claims were dismissed as unexhausted pursuant

to 28 U.S.C. § 2675(a)).  Notwithstanding the statutory bar of § 2676, plaintiff still fails to

establish any entitlement to relief via Bivens.

C.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT FOR PLAINTIFF'S BIVENS CLAIMS.

      1.    Plaintiff failed to exhaust administrative remedies for all of his Bivens claims.

Defendants argue that plaintiff failed to exhaust his administrative remedies for his claims

that Webb and Shoemaker used excessive force to handcuff and escort him to the interview room

and that drawing his blood was an unlawful search and seizure.  The Prison Litigation Reform

Act provides that "[n]o action shall be brought with respect to prison conditions under

[Bivens] . . ., by a prisoner confined in any jail, prison or other correctional facility until such

administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion

requirement is mandatory and "applies to all inmate suits about prison life[.]"  Porter v. Nussle,

534 U.S. 516, 524, 532 (2002). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006). When a prison provides an administrative grievance procedure, the inmate must file a grievance raising a particular claim and pursue it through all available levels of appeal to "properly exhaust." Id.; Dixon v. Page, 291 F.3d 485, 490-91 (7th Cir. 2002). An inmate's failure to exhaust is an affirmative defense that a defendant has the burden to prove. Jones v. Bock, 549 U.S. 199, 216 (2007).

To fully exhaust a Bivens claim, a federal prisoner must properly raise his grievance through all levels of the BOP's Administrative Remedy Program.[7] See 28 C.F.R. §§ 542.10, et seq. If unable to informally resolve an issue, an inmate may file a formal written complaint on form BP-9 within twenty calendar days of the complained act. Id. §§ 542.13-542.14. An inmate may appeal the warden's BP-9 response by filing a BP-10 to a regional director within twenty calendar days of the warden's response. Id. § 542.15(a). An inmate may appeal the regional director's BP-10 response by filing a BP-11 to the BOP's General Counsel within thirty calendar days of the regional director's final response. An inmate does not exhaust administrative remedies until the inmate appealed the grievance to all levels. Id.

An inmate may skip filing a BP-9 with a warden if "the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the [r]equest became known at the institution[.]" Id. § 542.14(d)(1). Instead, the inmate

---

[7] FTCA claim exhaustion is different. Claimants seeking to bring an action under the FTCA against the United States for money damages must first present the claim to the appropriate agency and have the claim finally denied by the agency. See 28 U.S.C. § 2675(a); McNeil v. United States, 508 U.S. 106, 113 (1993) (finding that pro se litigants are bound by the requirement of filing an initial claim to appropriate agency).

may submit the Request directly to the appropriate Regional Director.  The inmate shall clearly mark "Sensitive" upon the Request aand explain, in writing, the reason for not submitting the Request at the institution.  If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden.  The Warden shall allow a reasonable extension of time for such a resubmission.

Id.

    a.    Blood sample claim

The undisputed facts and plaintiff's administrative remedy record show plaintiff did not file a grievance about Nurse Meade drawing blood samples under Wilson's "threat of force." Accordingly, I find that plaintiff failed to exhaust his administrative remedies about the blood sample, and the defendants are entitled to summary judgment for this claim.[8]

    b.    Claims related to the use of force

The defendants argue that plaintiff did not exhaust administrative remedies about how tightly Webb applied the handcuffs and how Webb and Shoemaker escorted him to the interview room.  Plaintiff argues that defendants waived the defense of exhaustion because they argued in their first motion for summary judgment that plaintiff exhausted his "overall assault claim."

Defendants filed a motion for summary judgment as their initial responsive pleading and asserted that plaintiff failed to exhaust administrative remedies.  See Funding Sys. Leasing Corp. v. Pugh, 530 F.2d 91, 96 (5th Cir. 1976) (stating an affirmative defense may be raised by a

---

[8] Even if plaintiff exhausted administrative remedies about this claim, the defendants would have been entitled to qualified immunity.  USP Lee officials were justified in requiring plaintiff to submit to a blood test based upon their belief at the time that plaintiff had bitten Webb during the altercation.  The testing was performed to determine whether plaintiff had any communicable diseases that could have been passed by a human bite, and a nurse withdrew the blood without incident or consequence.

13

motion for summary judgment when it is a defendant's initial pleading). Defendants subsequently refined their argument about the specific claims plaintiff failed to exhaust. Plaintiff knew of the grievances he filed, and no unfair surprise or prejudice exists when plaintiff had an adequate opportunity to completely respond to defendants' assertions that plaintiff failed to exhaust administrative remedies. Therefore, defendants did not waive the affirmative defense that plaintiff failed to exhaust administrative remedies. A careful review of the undisputed material facts establishes that plaintiff failed to properly exhaust available administrative remedies in accordance with BOP policies for all of his claims except for the alleged use of excessive force in the interview room.

i.    Grievance #539303

The Original Complaint referenced grievance #539303, which the BOP described as "Assault by SHU staff." The defendants are correct that #539303 does not describe the handcuffing or escort that occurred on January 29, 2009, but instead describes only the events in the interview room. Defendants concede that grievance #539303 exhausted administrative remedies about the alleged use of excessive force in the interview room.

ii.    Grievance #531258

Plaintiff also submitted grievance #531258, which the BOP described as "I/M claims assaulted by staff" and plaintiff alleges is about Webb and Shoemaker using excessive force to deliver him to the interview room. (Pl.'s Grievance History (no. 68-1) 4.) Plaintiff originally filed grievance #531258 by first mailing a BP-10 to the Regional Director on February 17, 2009, and claiming it to be a "sensitive" issue. The Regional Director's Office rejected the BP-10 as improperly filed because it was not a "sensitive" issue, and an inmate must file a non-sensitive

grievance with a warden using a BP-9 form. 28 C.F.R. § 542.14(d)(1). The Regional Director's Office told plaintiff that he must first present his grievance to the warden and then appeal the warden's decision to the Regional Director. Plaintiff ignored this direction and refiled the same grievance with the Regional Director, whose office rejected the second grievance on March 16, 2009, as improperly filed. The Regional Director's Office again advised plaintiff how to file a non-sensitive grievance. BOP records reflect that plaintiff did not refile the grievance or otherwise pursue it though all levels of review.

Plaintiff avers that he filed a sensitive BP-9 in April 2009 after the Regional Director returned the first BP-10 for #531258. Plaintiff did not receive a response within forty-five days and then sent another BP-10 to the Regional Director. When plaintiff did not hear from the Regional Director within forty-five days, he sent a BP-11 to the BOP Central Office. Plaintiff avers that he has never received a response from prison officials for any of these grievances. (Pl.'s Resp. (no. 97) 2.)

Plaintiff's claims do not overcome the BOP records, especially since he does not provide any documentation to support his claims. Regardless, plaintiff admits he waited forty-five days until filing his administrative appeals, but BOP regulations require the appeals to be filed within twenty days of a warden's decision and thirty days within a Regional Director's decision. By plaintiff's own admissions, he failed to properly exhaust #531258.

     iii.  Grievance #541457

The BOP described grievance #541457 as "inmate alleges that staff assaulted him." (Pl.'s Grievance History (no. 68-1) 4.) Plaintiff filed grievance #541457 on May 7, 2009, with the Regional Director's Office. Plaintiff's grievance was rejected because plaintiff did not file a

copy of the BP-9, a BP-9 receipt, or a verified photocopy of the BP-9 with the grievance.  See 28

C.F.R. § 542.15(b)(1) (stating an appeal to the Regional Director must have a complete copy or

duplicate original of the BP-9 and the Warden's response).

Plaintiff admits that he did not provide the Regional Director with evidence of filing a

BP-9 about this grievance with the warden, as required by the grievance policy.  The BOP does

not have a copy of this grievance because Regional Directors only keep copies of rejected

grievances when they are allegedly about "sensitive issues."  Plaintiff provides no documentary

evidence to support that he exhausted grievance #541457 and provides no explanation for why he

has not kept copies of this grievance beyond his claim that BOP officials never responded.

Accordingly, plaintiff fails to overcome defendants' evidence that he did not exhaust grievance

#541457.

    2.   <u>Defendants are entitled to qualified immunity for plaintiff's Bivens claims.</u>

Defendants argue that the <u>Bivens</u> claims asserted against them in their individual

capacities are barred by the doctrine of qualified immunity.  Qualified immunity permits

"government officials performing discretionary functions . . . [to be] shielded from liability for

civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald,</u>

457 U.S. 800, 818 (1982).  Qualified immunity provides immunity from suit rather than a mere

defense to liability.  Thus, whether a defendant can claim qualified immunity is a pure question

of law and is properly determined pretrial.  <u>Saucier v. Katz</u>, 533 U.S. 194, 200-01 (2001)

(modified by <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009) (permitting lower courts the discretion to

determine which qualified immunity prong to analyze first)).

16

Once a defendant raises the qualified immunity defense, a plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right, and the defendant must prove that the right violated was not clearly established at the time of the incident to receive qualified immunity. Henry v. Purnell, 501 F.3d 374, 378 (4th Cir. 2007). "The unlawfulness of the action must be apparent when assessed from the perspective of an objectively reasonable official charged with knowledge of established law." Lopez v. Robinson, 914 F.2d 486, 489 (4th Cir. 1990). See Anderson v. Creighton, 483 U.S. 635, 640 (1987) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent."). After reviewing plaintiff's allegations, I find that plaintiff fails to show that any defendant violated any of plaintiff's rights. Accordingly, the defendants are entitled to qualified immunity in their individual capacities from damages for the Bivens claims.[9]

   a.  Eighth Amendment excessive force claims

A prisoner alleging excessive force must objectively show that a defendant "inflicted unnecessary and wanton pain and suffering." Whitley v. Albers, 475 U.S. 312, 320 (1986). See Wilson v. Seiter, 501 U.S. 294, 298 (1991) (holding that an Eighth Amendment claim for excessive force requires an objective deprivation of a basic human need and that prison officials subjectively acted with a sufficiently culpable state of mind). Therefore, the proper inquiry is whether the force applied was "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21.

---

[9] Plaintiff may not recover damages against the defendants in their official capacities. See, e.g., FDIC v. Meyer, 510 U.S. 471, 475, 484-86 (1994).

The subjective component encompasses "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." Id. at 321 (internal quotation marks, alterations, and citation omitted).  The objective element generally requires more than a de minimis use of force.  Hudson v. McMillian, 503 U.S. 1, 9-10 (1992).  "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid [Eighth Amendment] excessive force claim."  Wilkins v. Gaddy, ___ U.S. ___, 130 S. Ct. 1175, 1178 (2010).

Plaintiff alleges excessive force occurred when Shoemaker and Webb tightened plaintiff's handcuffs and twisted plaintiff's arms to escort plaintiff from the recreation cage; Laster and Stiller "slammed" plaintiff into the chair; Stiller put plaintiff in a chokehold and "slammed" plaintiff onto the concrete floor; and Webb and Whitey jumped on plaintiff's back with their knees and struck plaintiff in the ribs.  Plaintiff fails to establish that these defendants inflicted cruel and unusual punishment, and they are entitled to qualified immunity.

Webb placed the handcuffs on plaintiff to safely transport him from the outdoor recreation cage to an interview room inside the prison.  Certainly, tight handcuffs are necessary to safely transport inmates by maintaining control of inmates and keeping inmates from moving their arms.  The accusation that Webb tightened the necessary handcuffs is not itself repugnant to the conscience of mankind.  Webb and Shoemaker's alleged pulling on plaintiff's arms for two or three minutes during a transport to secure his compliance was necessary to maintain discipline as plaintiff repeatedly and emphatically told these defendants he had no desire or intention to meet with the FBI agents.  In light of such intransigence, it was reasonable for the officers to anticipate physical resistance from plaintiff.  Furthermore, the force used during the short

18

transport from the recreation cage to the interview room was minimal to effectuate plaintiff's compliant movement. Moreover, plaintiff did not allege that he experienced any physical injury from the event except for the numbness in his right hand, an injury he never reported and medical staff never observed.

Plaintiff's allegation that Laster and Stiller "slammed" him into a chair does not describe excessive force. Instead, plaintiff's descriptive language of being "slammed" into the chair without any consequence presents the use of de minimis force. See, e.g., Hudson, 503 U.S. at 9.

Stiller is also entitled to qualified immunity because plaintiff fails to show that he used excessive force in violation of the Eighth Amendment. Plaintiff admits he repeatedly told officers before arriving at the interview room that he refused to speak with the FBI officers or participate in any way. Plaintiff also admits to standing from the chair during the interview after "adamantly" and "vigorously" refusing to let them "interrogate" him. It is undeniable that a prisoner who is handcuffed behind his back inside a room filled with guests not trained in correctional techniques can still cause injury to himself or others if permitted to do so. When plaintiff stood up from the chair in the interview room containing attorneys and an FBI agent, Stiller, at worst, put plaintiff in a chokehold and dropped him to the floor to immobilize him so other officers could apply leg restraints. Officers escorted plaintiff to a medical evaluation once he was secured. The medical evaluation resulted in "no significant findings," "no apparent distress," and "no injuries . . . seen." The facts evince that Stiller's use of force was not done maliciously or sadistically to cause harm but rather was a good-faith effort to restore discipline.

Webb and Whitey are similarly entitled to qualified immunity. Even if Webb and Whitey jumped on plaintiff's back with their knees, such force was consistent with a good faith effort to

maintain or restore discipline while Stiller was preoccupied with restraining plaintiff's upper body against the floor. Plaintiff did not sustain any significant, or any particular, injury despite the alleged closed-fisted blows to his ribs, a hampered ability to breathe, and the combined force from Stiller, Webb, and Whitey. He did not describe any injury to medical staff, and Nurse Meade did not observe any injury. Although plaintiff states he did not feel any injury at that time because of adrenaline, his complaints about general soreness in his back that eventually went away are consistent with the use of force described by both parties, and such de minimis injury is consistent with the de minimis use of force. Accordingly, the evidence shows that Webb and Whitley acted in good faith to restore discipline and not maliciously and sadistically to cause harm.

       b.    Fifth Amendment retaliation claim

Plaintiff alleges that Laster filed a libelous incident report against plaintiff because plaintiff filed a grievance against Laster. Plaintiff argues that the libelous incident report violates his Fifth Amendment rights. Courts generally treat inmate claims of retaliation with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). To succeed on a retaliation claim via Bivens, plaintiff must allege facts sufficient to demonstrate that the alleged retaliatory act "was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams, 40 F.3d at 75. Thereafter, plaintiff must demonstrate that he suffered some adverse impact or actual injury. ACLU of Md.. Inc. v. Wicomico Cnty., 999 F.2d 780, 785 (4th Cir. 1993). Plaintiff must present specific evidence "establish[ing] that but for the retaliatory

motive, the complained of incident . . . would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). Plaintiff cannot rely on conclusory allegations of retaliation. Adams, 40 F.3d at 74.

Laster is entitled to qualified immunity for this claim. Plaintiff's temporary loss of privileges to buy commissary items or use the phone does not constitute an actual injury, and he does not present anything more than a conclusory allegation of retaliation. Furthermore, acts in retaliation for using grievance procedures do not give rise to a Bivens retaliation claim because inmates do not have a constitutional right to a prison grievance procedure. Id. Plaintiff argues that he states a claim of retaliation because other courts from other circuits have held that retaliation for filing a grievance is a legal possibility. Even assuming, arguendo, that Laster retaliated against plaintiff for filing a grievance, such an act would not have been a violation of clearly established law because, as plaintiff recognizes, various courts have reached different conclusions on the issue. Compare Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2009) (holding plaintiff stated a claim where he alleged prison officials destroyed property, threatened transfer, and assaulted him in retaliation for filing grievance and lawsuit), with Adams, 40 F.3d at 70 (finding inmates do not have a constitutional right to access grievance procedures). See Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999) ("If a right is recognized in some other circuit, but not in this one, an official [in this circuit] will ordinarily retain the [qualified] immunity defense.").

       c.     Bystander liability and supervisory liability claims

An officer may be liable on a theory of bystander liability if he: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to

prevent the harm; and (3) chooses not to act." Randall v. Prince George's Cnty., Md., 302 F.3d 188, 204 (4th Cir. 2002). Plaintiff must prove a violation of civil rights as a prerequisite to establishing a bystander liability claim. Willis v. Oakes, 493 F. Supp.2d 776, 784 (W.D. Va. 2007).

Plaintiff fails to establish that any defendant violated a civil right and, thus, cannot establish bystander liability. Furthermore, neither FBI Agent Snapp nor AUSAs Lee and Jacobsen were "fellow officers" or acting as correctional officers with a duty to act, which is necessary for bystander liability. Lee, Jacobsen, and Snapp were guests at USP Lee to interview plaintiff about an investigation. Accordingly, bystander liability cannot be imposed on them.

Plaintiff similarly fails to state a claim against O'Brien and Wilson as a supervisor or a bystander. Supervisory liability under § 1983 may not be predicated on the theory of respondeat superior. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7 (1978). Plaintiff fails to show O'Brien's or Wilson's personal fault either based on personal conduct or another's conduct in execution of O'Brien's or Wilson's policies or customs. See Fisher v. Washington Metropolitan Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir. 1982), abrogated on other grounds by Cnty. of Riverside v. McLaughlin, 500 U.S. 44 (1991) (finding that § 1983 requires a showing of personal fault on the part of a defendant either based on the defendant's personal conduct or another's conduct in execution of the defendant's policies or customs). See also Farmer v. Brennan, 511 U.S. 825, 839-40 (1994) (finding that case law involving § 1983 claims is applicable in Bivens actions and vice versa).

III.

For the foregoing reasons, I grant plaintiff's motion to substitute and join the United States, Lee, Jacobsen, and Snapp as defendants and terminate the John Does as defendants. I also grant defendants' motions for summary judgment and deny plaintiff's cross-motion for partial summary judgment. I deny as moot plaintiff's motion for a copy of a certified mail receipt[10] and strike plaintiff's first, unsigned response[11] to defendants' supplemental motion for summary judgment.

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to plaintiff and counsel of record for defendants.

**ENTER**: This _____ day of March, 2012.

Senior United States District Judge

---

[10] Plaintiff requested a copy of the certified mail receipt to calculate when defendants' responses would be due. Because the defendants already responded to the Amended Complaint, I dismiss plaintiff's request as moot.

[11] I ordered plaintiff to submit a signed response to defendants' supplemental motion for summary judgment because that response did not have his signature. Fed. R. Civ. P. 11(a). Plaintiff subsequently filed a new response with his signature. Therefore, I strike his prior response that did not have his signature and consider his signed response.